Ms. Clare? I please the Court. Alice and Clare, Assistant Federal Defender on behalf of the appellant and petitioner, Mr. Cooper. I'll try to reserve five minutes for rebuttal, and I want to start this morning with the issue of malice. This case, as you know, is about insufficiency. That is, the absence of evidence sufficient to establish intent beyond a reasonable doubt. And what's glaring here is the absence of a factual basis for any explanation of the shooting, but that suggested by Detective Lee. He's the officer in the car who said, when our headlights hit this group of pedestrians and they reached for their waistbands, I ducked because I, and this is my aside here, he testified 11 years' experience in the Fresno Police Department. He knows the neighborhood. It's a low-income residential neighborhood. These fellows are on feet, not just driving through. And he thinks that on the totality of the circumstances, those people out there in this context are likely to think this is an attempt to drive by and to shoot at his position. That's why he ducks. Now, since there's no other evidence put on by either side that would be inconsistent with that or offer even a plausible alternative, there was no basis for the jury to reject this mistaken self-defense theory. The thing that really bothers me about the facts of this case, I'll just lay it right out for you, is the fact that it was your client who drew and fired. They, he clearly was, he and his colleagues, were clearly the primary aggressors. And had they seen guns displayed by the officers? But as I understand the argument, it is from the mere, I'll call it suspicious turn, which Officer Lee admitted on cross-examination could have been interpreted as, you know, possibly a turn leading up to a drive-by. The next thing that happens is that your client and his associates, you know, go for leather and start firing. And the bullets land in such a way that there isn't much doubt that if the officers hadn't conducted, Lee might not have been here to testify about it. Isn't that sufficient to support however quick that all happened, premeditation and attempted murder? I think not for this reason. And I think your point is an interesting one in that certainly had the fellows on the street seen windows rolling down and guns drawn, then there is a reasonable person standing on the street would have immediately seen the need for self-defense. You're making me very careful the next time I drive through Fresno that I don't make any sudden turns in my car. I would avoid unison Florence, Your Honor. As will I. But the issue here, and this is why I started with malice, because I think what's most significant is whether the state's evidence, and here we're talking inferential chains of reasoning from the circumstances, is sufficient to dispel a reasonable doubt as to malice, which is in an attempt case, an express intent to kill, which is unrelated to a mistaken belief in the need for self-defense. California does not make imperfect self-defense an affirmative defense, which makes this case entirely unlike the Sixth Circuit case upon which the respondent has relied in putting forth their theory that affirmative defenses are irrelevant under Jackson. In California, and the state Supreme Court made it explicit in the People v. Flannel case, which is cited in the briefs, imperfect self-defense, an honest but mistaken belief in the need to defend, negates malice. It knocks out an essential element, and it is the prosecutor's burden at all times to prove that malice exists beyond a reasonable doubt. Here, the only information that the jury had from which to construct a story about how this could have happened was Dr. Lee, excuse me, Detective Lee's testimony that it could have looked like a drive-by to people on the street. And given the fact that that possibility would, if accepted by the jury, even only to the degree of raising a doubt, negate malice, how do the other circumstances, which are more a basis for speculation, dispel or exclude, in this court's language, the reasonable doubt? I think that the Fifth District's opinion on this issue, which is what's before us, is unreasonable precisely in its analysis of the relationship between the state's burden to prove malice beyond a reasonable doubt and the reasonable doubt. I want to go in argument just one step further. I want to make sure I understand. Yes. You're arguing the case. Well, I want to make sure I understand your logic here. It is from the mere fact that the turn could have been interpreted as the predicate to a drive-by shooting that, as a matter of law, raises a reasonable doubt that the element has been established beyond a reasonable doubt. And the prosecution is relying on inferences from the circumstances to generate that element. We have to consider the entire context. But that goes back to the question I asked you earlier. If that's so, can't we then look to the gun that was fired first? If you've got to remember that the car was, at the time that my client drew and fired, 20 feet away from him with the headlights directly on him. So if, indeed, this is a rival gang in the car, that window is going to go down and that gun is going to come out very, very quickly if he does not draw and fire first. No question that this happened very rapidly. Extremely rapidly. Within seconds. Within less than a minute. But when he fired, the headlights were no longer on him, were they? Because as I understood the trajectory evidence, one of the bullets struck the right front passenger post and the other, what, came through the windshield? When I reviewed Detective Lee's testimony last night, I'm quite sure I reassured myself that he said the headlights were directly on him. I mean, clearly they would have swept on them as the turn was made. They were unable to execute the full U because the street was too narrow. And so they got to the point where they had made half a turn, like it was going to be a three-point turn almost. They turned around so that the car was directly facing, here's the defendant and here's the car. And it was at that point they needed to back up and reverse course so they could complete the turn. And it was before they pulled into reverse that the shooting took place. Okay. So it was directly when Mr. Cooper was facing the car, which means that any shots he would have fired would have hit the front end of the car and been likely to go into the windshield, regardless of any specific premeditated attempt. So was the windshield broken by one or both rounds? Yes. By the first round, which consisted of two bullets in very short succession. Well, were there two bullet holes in the windshield? That is unclear to me. The detectives testify that they heard two shots. Ah, right. And the windshield shattered and there was one bullet hole found in the car. Okay. So the windshield completely shattered? That's pretty unusual for a defendant. I'm sure the entire thing did not fall out, but it broke as the bullet entered the car through the windshield. Well, I don't claim to be an expert on windshield bullet holes, but I would expect to see two identifiable holes in the windshield, which if it's safety glass, should, you know, fracture like a spider web as opposed to just blowing the window out. Did you say one of them hit the post that supports the windshield? Right front passenger post, I think, isn't it, Ms. Clark? My memory of this is that the bullet hit where the shoulder harness comes down for the front passenger. So inside the passenger compartment above the shoulder of the passenger and that side, along the side of the door. Was there not a photograph of the windshield of the police car introduced into evidence at the trial? I honestly don't recall that offhand. What I've reviewed in greatest detail in preparation for this morning was the testimony of all of the officers. And that testimony is fairly cursory. You have it all in the excerpts of record. I mean, they say the same thing. We pulled around. When our headlights were directly on the guys, they reached for their waistbands. We all instantly dutched before the shots were even fired. No one saw that it was, in fact, Mr. Cooper who fired the gun. But certainly under Jackson, I'm more than happy to concede that because he was identified as being out in front with a gun pointed, that we conclude that he fired those shots. But again, as to malice, there is no malice if the defendant acted under the belief that he was about to be fired on. And while evidence to support that conclusion was before the jury, there was no other explanation. When a jury is trying to inferentially reason about intent, as the state cases tell us, there are several types of evidence they look for. One is planning. One is motive. These are broad categories. And the other is the manner of the killing. Motive, I think, actually is too narrow of a word. What the jury wants to know and what we in thinking about the logical chains of reasoning involved want to know is why did this happen? What was going on that led to this? Sometimes the answer is one which provides a motive for the charged offense. Sometimes the answer is one which provides a justification or an excuse. But here, the only reason at all that is suggested by the evidence as to why these pedestrians would have shot at the car is that they believed it to have been a drive-by shooting. And for that reason But we have to find, do we not, that the mere act of making the turn would give rise to a reasonable fear on the part of your client? An unreasonable fear. An unreasonable fear. A mistaken fear on the part of my client. And again, it's important to... Assume the turn. No windows rolled down, no weapons inside the car. From the fact that the car had driven by relatively slowly, because it was looking for a left, passed them, and then very soon after passing them, turning around and heading back toward their position. I'm sure that we've all read lots of cases, and it is a very familiar scenario. And again, the burden of proof here is with the prosecution, and this is why I want to turn to the California Court of Appeals decision and discuss its unreasonableness. I started to say a moment ago, I want to go one step further than I did in the brief and suggest not only that by shifting the burden, by stating in conclusion, I'm quoting from tab 11, which is the Court of Appeals decision at page 19, although the court to the trial court found Detective Lee's testimony sufficient to justify the instruction on unreasonable self-defense. The evidence by no means compelled a finding that this was the motivation for defendant's acts. Thus, the claim fails. Well, that is stating that it was Mr. Cooper's burden to affirmatively prove his state of mind here. The only issue is reasonable doubt. I read that that way. I read that to mean that we're not sure he was even entitled to an instruction of imperfect self-defense on this evidence, but the trial court went ahead and gave it anyway. I beg to differ. Am I misreading what the Court of Appeals was talking about? Well, I think you are. Their discussion, and it is admittedly hard to quite discern because the conclusion they only discussed this for a paragraph and a half on pages 18 and 19 of the decision. But they criticized this claim on the basis that there was no direct evidence presented of Mr. Cooper's state of mind. Of course, there's no requirement of such direct evidence, though, that he had armed himself with a fully loaded weapon and was able promptly to start opening fire as soon as he wanted to. So that shows planning. It may not show malice in the old-fashioned sense of the kind of malice that is frequently used in death penalty cases, but this pre-planning is certainly a rational finder of fact, could find from this behavior that there's planning had gone. He was ready to aim fire at anybody he chose. Well, Judge Goodwin, I think it's significant here that there is required in an attempt case a nexus between the specific act and, you know, the specific attempt act and the mens rea element. And arming oneself and going at it into public may indicate a very generalized intent to be prepared for any violence which might befall one, but that is not specifically linked to the act which follows. Or be prepared to take on any target of opportunity that presents itself. But since there is nothing to link, we don't know the circumstances under which he armed himself. There's no information there. We don't know when it happened. And so we would not, in the case of the one California cases, look to evidence of being armed as one factor supporting premeditation only when the arming happened during the course of a conflict with someone who became the victim related to that altercation or was otherwise part of a plan specific to that victim. That's not present in this case. Another thing I'd like to point out about the court of appeals decision, because it's not in the briefs, is that on the issue which is not before this court, but which is analytically somewhat related, of the harmlessness of the instructional error as to implied malice, the court of appeals relies on the inference from Detective Lee's testimony that the defendant would have thought this was a drive-by to say that is why he pointed and fired at that particular position. Therefore, that would support premeditation as to Detective Lee. And I submit that it is unreasonable to use Judge Goodwin's words, wouldn't he be the closest target of opportunity at that point vis-a-vis the position of your client in the vehicle? I think that either of the front seat passengers would have been, you know, in some danger from any shot directly forward toward the car. But in discussing the rationality or the reasonableness of the court of appeals decision, what I wanted to point out is that on this other issue, they credit the mistaken drive-by testimony. They say it would be reasonable for the jury to infer here that the defendant did think this was a drive-by, and that's why he aimed at this one position. But then when it comes to malice, which is the only reasonable inference that a juror could draw, would it? I mean, couldn't a juror equally draw the inference that the defendant was prepared to shoot anybody that he chose that came along? That, I would say, is speculation, along with a list of other possible scenarios that we could make up to explain why this might have happened. Only one of the possible scenarios on this list of speculations we might generate had any actual evidence that would support it at all, and that would be the mistaken drive-by theory. And it's because there is a little bit there and nothing as to any of the other explanatory scenarios. What do we do with the fact that your client didn't run away when the officers yelled police three times, and instead one hit behind a tree and then one of his Confederates, I guess, hung around the corner of the house as if lying in wait to continue firing if the occupants of the car got out? Well, again, I think this is one of those situations where we're called upon to look at the distinction between a reasonable inference and speculation. There are many reasons that one could wait to see if the car went away, to make sure that it was safe, to see if you could get any information about who it was. But it could also be consistent with lying in wait to finish the job. Consistent with, but nothing to support that inference as compared to any of the others. And also, I think it's indisputed. It was a continuation of gunfire, right? At that point, the officers then returned fire, but then they were fired on again. That's right. And the second, I think it is important that the attempted murder charge here really depends on those first shots that included the one that broke the windshield, because the second shot. You're saying that the jury couldn't, in its consideration of all of the evidence, consider your client's conduct in not running away like the other ones did? And in continuing, perhaps, to engage in a running gunfight? Well, there's no evidence at all of where that second round of gunfire came from, whose position it might have been. Certainly conduct after the fact can be relevant, and in other cases is. Again, I submit that in this case, nothing about the conduct after the fact supports the inference that has been made here. I do want to save the time. Thank you. Good morning, Your Honors. Jeff Firestone, California Deputy Attorney General, representing the California State Appellate Court. And as far as the 5 DCA's decision, this California State Appellate Court's decision, the appellee submits that it is not objectively unreasonable. It's not an objectively unreasonable application of Jackson v. Virginia. As far as some of the points that this Court has made, the appellant was a primary aggressor here. He carried, as far as going to premeditation and deliberation, he had a loaded firearm carried on his person in his waistband where it was readily accessible. When he drew the firearm out, as the State Appellate Court noted, there was no hesitation. He aimed it at the officers. He also took what I would characterize as a shooter stance. He didn't just draw with one hand, but he took the gun out and he put his second hand on top of the firearm or on the firearm and with both hands aimed the firearm at the vehicle and fired not one but two shots. The first shot penetrated the windshield and the Court had asked about, as far as the location of the shots, the 5th District Court of Appeals opinion summarizes that. I put a more detailed summary in my Statement of Facts in the Respondent's Brief, which is in the supplemental excerpts of record. You don't have a picture, though, I take it? No, I don't have a picture of the vehicle. What my Respondent's Brief says, it's got some citations, the reporter's transcript, which I believe those pages are included in the excerpts of record. One bullet penetrated the front windshield, hit the shoulder harness for the right front passenger seat belt and lodged in the right door frame. Another bullet was later discovered on the left rear floorboard. And what the 5th District Court of Appeals found was that, as far as that second bullet that was found on the floorboard, we don't know if that was in the first volley of shots or the second volley of shots. However, I believe it was Detective Freeman, he testified hearing ricochets, shots at the vehicle and ricochets, and he only testified to that in regards to the first firing of shots. So a reasonable trier of fact could draw an inference that the bullet that ended up on the floorboard of the vehicle was during the first volley of shots. One thing counsel had referred to is that Appellant could have thought that this was a rival gang. Well, first of all, as far as I can tell from the record, there was no evidence presented that Appellant was even in a gang, that these were gang members versus just youths walking down the street with guns. I mean, you could draw some inferences. Youths walking down the street all heavily armed? Yeah, I guess we could. But not gang members? Kind of a posse or a group of vigilantes? There was no evidence before the jury as far as that Appellant was a gang member, that he had been a victim of a drive-by shooting, that this was an area known for drive-by shootings, that Appellant had any reason to believe that he would be subject to a drive-by shooting. Was there any testimony in the record as to what the officers looked like? I assume they were not in uniform and what their race were? No, I don't believe there was. As far as not in uniform, I believe that was established that they were playing clothes in an unmarked. But we don't know if they looked like gangbangers either, riding around in a low ride. And I assume this was not an unmarked Crown Victoria that they were driving with black sidewall tires. They didn't specify what type of vehicle. There's also, though, as far as I know, there was no testimony as far as a passenger window being down, an arm being extended out of the passenger window, anything being exhibited from the passenger window. As far as the standard, again, it's whether any reasonable trier of fact could find beyond a reasonable doubt the elements of the crime were met, and that would be premeditation and deliberation. And from the actions that we have, the no hesitancy in firing, the placing of the shots that hit the passenger side of the vehicle, not one but two shots, and then also after the shots are fired and when the officers identify themselves as police officers multiple times, the defendant takes up a position where he goes by a tree, which could be, as you said, Judge Tallman, a lying in wait type position. And from that evidence, a jury could infer that he acted with cool detachment, and that this was premeditated and deliberated. Well, Mr. Firestone, one of the things that concerns me as a matter of substantive criminal law in California is this case does appear to be an extension of sort of the more typical premeditation case. I mean, all the cases that I looked at were murder cases where based upon what happened at the crime scene, the jury was allowed to infer that the defendant must have engaged in acts of premeditation, even if it occurred in a relatively short period of time. I'm having a hard time making the intellectual leap, because as Ms. Clare points out, this all happened very rapidly, and we're sort of searching for a motive or a reason why the shooting started. Well, one thing, as far as a motive or a reason, and I'm not trying to belittle the point, the people are not required to prove motive. We don't have to prove motive. This could have been easily a random act of the senses. But you are required to prove premeditation, and you're trying to do it, I guess, inferentially from the fact that these guys are packing weapons, that, you know, they go for them quickly, seemingly without much provocation, and then immediately start shooting. And maybe that's enough. I mean, the California cases certainly say that the jury can find premeditation, you know, in a very quick time frame. Right. Well, they would have had the opportunity. He obviously had the opportunity to reflect. He had the gun. It was concealed under his jacket. So he had to raise his jacket, pull the weapon out. The weapon was already loaded, which could be consistent with planning activity as far as, hey, I've loaded this gun or I've got this loaded gun. There's no question. Would the theory of it be that the premeditation was that I'm going to shoot any car that goes by? Is that the idea? Well, his activity is consistent with that as far as that could be one. I'm there, I'm loaded, and any car that comes by, I'm going to shoot at it and try to kill. It's consistent with that. It's not inconsistent with that as far as that he's going to. Pretty remote inference, though, isn't it? I would say that that would be a remote inference, but it is a. . . And it wasn't until I backed up again and the lights flashed that he shot. Well, it was a three-point U-turn that they were trying to execute. So the vehicle passed the subjects that were walking on the street, and in that case it overshot the place where it was going to turn. So what the vehicle did was move to the right, and then the driver swung it to the right and then far to the left and was in the process of being about to back up when the guns were drawn after the lights flashed across the group. Now, at that point, though, the group had already stopped and was watching the vehicle, and then when the lights flashed across the group, that's when the weapons were drawn. So the premeditation would be to shoot at any car that comes up and flashes their lights across it? As far as premeditation, the motive, we don't know what the motive was. What motive? I'm talking about premeditation. Well, the premeditation would be the time that he had to think about it and think about his actions and what he was going to do. And so that would be lifting up the shirt, taking out it. It includes watching the vehicle, lifting up the shirt, taking out the gun, pointing at the vehicle, putting both hands on it, and then firing his shots. And the shots weren't just wild random shots. They were, I would say, meticulously placed as far as the passenger side of the vehicle, which would have been the closest point of the vehicle that was to him. So the premeditation is pulling it out of his waistband and holding it up. That's enough for premeditation? Well, I believe the definition of premeditation is, if I could have just a moment. I'm thinking about ahead of it. Premeditated, under the instruction, it's at page 446 of Excerpt of Record 9. Premeditated means considered beforehand. And so considered beforehand. Yeah, before what? I would take it before the shots were fired. And so here he had the opportunity for reflection, to think about his actions. Is that what it means? I mean, if we had, I guess, a classic second-degree murder situation, you could have a sudden quarrel or heat of passion and then a gun being pulled and fired. And you wouldn't necessarily have premeditation in the mere act of drawing the gun and firing, would you? Well, heat of passion would negate heat of passion. Excuse me, if I could just read this, Your Honor. Sure. As far as deliberate means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. Oh, and your response to my question is, if he's inflamed by passion, then he either isn't capable or isn't thinking about what he's doing. He's just sort of doing it automatically. Well, the instruction says, and that's consistent with what I would argue, is that deliberate intent to kill, which was a result of deliberation premeditation, so that it must have been formed upon preexisting reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation. It is an attempt to commit willful, deliberate and premeditated murder. So the passion would override the mental thought process that you want the jury to reach, which is that these acts are more deliberate. Exactly. Okay. Exactly. As far as the malice aspect, the Fifth District Court of Appeal, again, their decision is not objectionably unreasonable. What they did was they looked at the argument that was raised, but they also commented on the specific intent to kill. And malice is the specific intent to kill, the form specific intent to kill. And what would negate malice would be the imperfect self-defense theory. And what counsel argued on appeal was that there is no way that a reasonable prior fact could find that this wasn't imperfect self-defense. And the Fifth District Court of Appeal looked at that and they said, well, first of all, for all the reasons that we've said before, that given the placement of the shots – well, actually, they just referred to the previous argument – the manner of killing, the planning activity, that that shows that we do have a specific intent to kill. And then as far as what their argument boils down to is they're saying that there couldn't be anything but imperfect self-defense in this case and there wasn't anything really for the jury to glom onto to support that. And so that's why they rejected it. But the Fifth District still applied. Jackson v. Virginia, they looked at the evidence in the light most favorable to the finding below and they found that a reasonable prior fact could find the necessary element of malice aforethought, the specific intent to kill, for purposes of the attempted deliberate and premeditated murder. For the Jackson analysis, your argument has, I guess, has to be that the evidence was sufficient. The jury could have bought the imperfect self-defense theory, but the evidence was also sufficient to reject that and to conclude that the act was premeditated with intent to kill. Well, when a conviction comes up on appeal, the issue is not whether there were other – generally the issue is not could other – there could be other explanations for the conduct. It's were the elements of the offense met. And were the elements of premeditation, deliberation, and malice aforethought met? Yes. The way the appellant went on to argue it was that the jury couldn't find anything else but this other element. And what the Fifth District found is based on the evidence in the record, there wasn't even enough to support that. The judge gave the instruction, but there wouldn't have been anything to – enough to support that finding. And so that – And the evidence was sufficient to support premeditation. Exactly. That's what they said. Right. Exactly. Again, the Fifth District looked at it. They looked at the evidence. They found that there was evidence from which a reasonable prior effect could find that the elements were proven beyond a reasonable doubt, which is all that Jackson requires. And we would submit that under AEDPA, the decision is not contrary to, that by the appropriate standard, and it's not an unreasonable application of, and therefore, that the State appellate court's decision should be upheld. And with that, I'd submit it. Okay. Thank you very much. Ms. Clark. Briefly, Your Honors, on the issue of premeditation, the instruction that you were discussing with opposing counsel a moment ago goes on specifically to say that if what we have is an action taken in a rash impulse, that is not premeditation, even with intent to kill. And given – That was given, that instruction. Yes, Your Honor. And what we have here are events that unfolded so rapidly that I think the – you cannot rationally infer from the rapidity of the unfolding of events that this was anything other than a rash impulse. I think also as to premeditation, as I mentioned before, and I think this part's in the brief, that – But to get there, don't we have to essentially reject the District Court of Appeals conclusion under California law that the evidence was sufficient and declare that that legal conclusion was objectively unreasonable in order to grant relief under AEDPA? Yes. And it's objectively unreasonable because as to premeditation now, as opposed to malice, they relied on the fact – what Judge Goodwin brought up before, the fact that the fellow was armed with a loaded weapon. And under California law that I recited in my reply brief, that is insufficient by itself. You've got to have some kind of nexus to a victim here. Admittedly, there's nothing about motive, which is another circumstance that can support it. So what you've got is the manner of killing. And the manner of killing includes how rapidly this all happened, the fact that it was an automatic reaction to what the car did. So whether or not the jury or we in evaluating this are persuaded about the strength of an imperfect self-defense theory, I think that it does not support a rational conclusion that there was premeditation as opposed to an automatic response, which is the antithesis of premeditation. There's also – I think Judge Hugg was correct in his questions indicating that it is simply too remote to be a rational inference to think that there was a plan in advance to shoot any car that came along, which really is the only logical alternative to that. In sum, there's no doubt in my mind or in any of our minds that the State could obtain and sustain a conviction in this case for assault with a firearm, perhaps even for attempted manslaughter. But for the reasons I've explained, the premeditation finding is objectively unreasonable, and also malice cannot be sustained here given the fact that the only explanatory evidence at all for the unfolding of defense was the mistake about the drive-by shooting. Submitted. Thank you, Counsel. The case was well argued. I enjoyed the argument. And it is taken under submission. And that finishes our calendar for the day, and we are adjourned. Thank you. Thank you. Thank you.
judges: Goodwin, Hug, Tallman